IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MALGORZATA WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. RWT 07-1347 |
| | ) | |
| CHARLES W. WAGNER | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

This Court first became familiar with Plaintiff Malgorzata Wagner (formerly known as Malgorzata Pietrzak) on March 19, 2007, when her ex-husband filed a complaint against her under the International Child Abduction Remedies Act ("ICARA"),[1] seeking the return of his 10-year old daughter, A.[2] This Court entered a show cause order and held an initial hearing on the matter on March 23, 2007. Rather than continue with court proceedings, the parties in that case, *Pietrzak v. Pietrzak*, RWT 07-688, entered a joint "Voluntary Order Directing Return of Minor to Country of Habitual Residence," which the Court approved on June 11, 2007. As stated in that consent order, Mrs. Wagner, the defendant in the *Pietrzak* matter, was ordered to return to Poland with her daughter, A, on July 18, 2007. This order was consistent with the principles of ICARA, which

---

[1] The Hague Convention, a treaty to which the United States is a signatory party, provides a mandatory remedy of return that is meant both to preserve the status quo with respect to child custody and "to deter parents from crossing international boundaries in search of a more sympathetic court." Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001) (internal quotations and citation omitted). The United States implemented the Convention's terms by statute in International Child Abduction Remedies Act ("ICARA"). Id. at 397.

[2] After A was brought to the United States by Mrs. Wagner, a Polish court determined that the removal of A from Poland violated the custody rights of Mrs. Wagner's first husband, observing that she had "move[d] to live there [in the United States] permanently." Decision of the District Court in Lublin, Poland, 6th Family & Juvenile Division, Feb. 20, 2007 at 4, Court's Exhibit 1.

provides a mandatory remedy of return of abducted children. Miller, 240 F.3d at 398.[3]

Ms. Wagner now returns to this Court as a plaintiff, but the issue concerns a different child. Based on information in the record, it is undisputed that Plaintiff met Defendant, Mr. Wagner, in September, 2005 while he was conducting business in Poland. After this five-day visit, Mr. Wagner returned to his home in St. Mary's County, Maryland. Plaintiff and Defendant remained in contact, and Mr. Wagner visited Poland a second time for a nine-day vacation in December, 2005. In January, 2006, Plaintiff came to St. Mary's County, Maryland to visit Mr. Wagner. After this visit, the two became engaged. Mrs. Wagner subsequently came to the United States with her daughter, A. On June 14, 2006, Plaintiff and Defendant were married in a civil ceremony in the United States. Plaintiff gave birth in the United States to the couple's son, T, on February 28, 2007, and the child has resided continuously in this country since his birth.

In light of this Court's order directing Mrs. Wagner to return to Poland with her 10-year old daughter, A, Plaintiff now seeks to bring with her the infant child, T, who was fathered by Mr. Wagner. She has fashioned her request as a "Motion to Establish Poland as County of Habitual Residence," asking this Court to enter an order declaring Poland to be the "habitual residence" of the infant, T, even though T has never been in Poland. For reasons stated below, this Court cannot grant Plaintiff's petition.

---

[3] In her complaint, Plaintiff admits to violating the law: "the [...] taking of A was wrongful, and it is not surprising that A must return home to Poland. [Plaintiff] had no authority to remove A from Poland. [Plaintiff] assumed the risk that the translocation would fail because [she] acted without the necessary authority and consent. Petitioner's Memorandum in Support of Verified Petition at 7. Plaintiff has tried to characterize the abduction of A as a decision and action carried out by Plaintiff and Defendant together, acting in concert with one another. Because the Court concludes that it lacks jurisdiction, it need not resolve this dispute.

I.

"The Hague Convention is by its terms intended 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and ... to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" Bader v. Kramer, 445 F.3d 346, 349 (4th Cir. 2006) (quoting Article 1 of the Hague Convention). Article 3 of the Convention further defines the removal of a child as wrongful when custody rights are breached according to the law of the State in which the child was habitually resident immediately before the removal or retention, and said custody rights were actually exercised, or would have been so exercised but for the removal or retention. Hague Convention, art. 3, T.I.A.S. No. 11,670, at 1501, 19 I.L.M. 1501 (1980).[4]

According to the Hague Convention, jurisdiction in this Court is proper only when there has been a removal or retention in violation of custody rights. Mozes v. Mozes, 239 F.3d 1067, 1070 (9th Cir. 2001). "[T]he scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim." Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001). The Fourth Circuit has further explained that in ICARA cases, the federal courts must be careful not to get

---

[4]The full text of Article 3 of the Convention is as follows:

The removal or the retention of a child is to be considered wrongful where –

(a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
(b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

involved with access or custody determinations, as there is "long established precedent that federal courts are of limited jurisdiction and generally abstain from hearing child custody matters." Cohen v. Cantor, 442 F.2d 196, 201-202 (4th Cir. 2006); Miller, 240 F.3d at 398 ("[t]he merits of any underlying custody case are *not* at issue")(emphasis in original).

Under the undisputed facts of this case and the governing law, the Court simply cannot find any basis for jurisdiction over the instant case. In the first place, there has been no removal of the child, T, from Maryland. Without removal or retention of T in violation of the custody laws of an allegedly habitual resident state, ICARA does not come into play. Secondly, as the Fourth Circuit has made clear in Cantor, this Court is one of limited jurisdiction that should not get involved in custody disputes. 442 F.2d at 202. Although Plaintiff has fashioned her complaint in such a way as to conjure federal question jurisdiction, the Court concludes that ICARA is not applicable at this time because the custody dispute is still pending in the Maryland state court system.[5] Should Plaintiff take T with her to Poland, the case would become an ICARA matter and *Mr. Wagner* could then appropriately seek relief under ICARA in the Polish court system. At this time, however, ICARA does not apply to this case and thus this Court lacks jurisdiction.

## II.

Even if this Court were to have proper jurisdiction over the case, it would be required to consider the specific facts of this case to determine the habitual residence of the child under ICARA. Miller, 240 F.3d at 400; Mozes, 239 F.3d at 1071-73. This matter is left to common law, as the statutory scheme does not define "habitual residence." Miller, 240 F.3d at 400. As explained by the

---

[5] Prior to the filing of this case, Mr. Wagner filed a custody action in the Circuit Court for St. Mary's County. That case is still pending, and the Circuit Court has not yet determined the parents' custody and access rights with respect to T.

Fourth Circuit, "[o]n its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward." Id..

Based on the record before the Court, including the evidence introduced during a hearing held on June 21, 2007, there simply are no facts to support a finding that Poland is the habitual residence of the minor child, T. T is a United States citizen whose father is also a United States citizen. He was born in Maryland, and has lived in Maryland for his entire life. Following the pragmatic approach to habitual residence endorsed by the Fourth Circuit, T's habitual residence cannot be any place other than the United States at this point in his life. Miller, 240 F.3d at 400 ("there is no real distinction between ordinary residence and habitual residence"). T has never traveled outside of this country to Poland or any other country. While the Court can appreciate that as the unemployed spouse, Mrs. Wagner, a Polish citizen who is a legal permanent resident of the United States, has been the primary care-giver up until this point, this fact alone cannot displace the United States as T's country of habitual residence. Nor can the fact that his Polish mother wishes to take him to Poland to live with her and A, create a habitual residence in Poland.

The Court notes that the case is somewhat complicated because it does not involve the translocation of the family, only one spouse. But this complication does not alter the Court's conclusion. It also does not equate this case with Kijowaska v. Haines, 463 F.3d 583 (7th Cir. 2006), as the Plaintiff suggests. In that case, there had been a removal of a child born in the United States to Poland. Id. at 585, 588.[6] Here, there has been no "actual change in geography," which, according to at least one appellate court to interpret ICARA, is a precursor to determining habitual

---

[6]There was a subsequent removal of the child from Poland back to the United States. Id. Because the mother in that case was attempting to travel back to the United States on an expired student visa to visit the child's father (who was not her husband), customs agents sent the mother back to Poland but detained the American-born child in the United States consistent with a U.S. Court order. Id.

residence. <u>Mozes</u>, 240 F.3d at 1078. The child at issue in this case was not yet born when Mrs. Wagner moved from Poland to Maryland.

Second, it is appropriate for the Court to consider "the intention or purpose . . . of the person or persons entitled to fix the place of the child's residence." <u>Mozes</u>, 240 F.3d at 1076 (citing <u>Feder v. Evans-Feder</u>, 63 F.3d 217, 224 (3d Cir. 1995). Here, however, there is a dispute between the parents as to whether there was a mutual intent to raise T in Poland. Given the circumstances, however, there is insufficient proof that Mr. Wagner agreed to move to Poland with Mrs. Wagner and T, should she need to return with A to that country. Among other relevant facts, Mr. Wagner has visited Poland only twice, for less than 20 days, and he does not speak Polish. The evidence provided to the Court does not show that the parents of T had an intent to raise him anywhere other than the United States. In fact, the evidence submitted to the Court, and as evidenced by the parties in Mrs. Wagner's petition to the United States Citizenship and Immigration Services for a fiancee visa, demonstrates an intent for Mrs. Wagner to live in the United States with Mr. Wagner, allowing him to continue working in Maryland.[7]

Under the circumstances, Mrs. Wagner's petition appears to be "wishful thinking alone," which is not sufficient to change T's habitual residence from the United States to Poland. <u>Mozes</u>, 239 F.3d at 1078 ("[w]hile the decision to alter a child's habitual residence depends on the settled intention of the parents, they cannot accomplish this transformation by wishful thinking alone").

---

[7] Mrs. Wagner stated in her application for a fiancee visa to the United States government that, "we began creating our plans of the future. These include getting married in the United States, and living in Maryland where he [Mr. Wagner] can continue his work. We hope to do this with a visa for fiancee." See Defendant's "Verified Response With Incorporated Memorandum of Law," Exhibit 2 at 4. Plaintiff further stated on a subsequent immigration form, "Application for Travel Document," that she was "applying for an advance parole document to allow me to return to the United States after temporary foreign travel." This document further implicates that Mrs. Wagner intended to settle with her family in the United States permanently. See Defendant's Exhibit 2.

Thus the Court concludes that, even if it had proper jurisdiction over the case at this time, it would conclude that the United States is T's habitual residence under ICARA.

### III.

In her complaint, Mrs. Wagner essentially has asked this Court to become involved with the custody battle involving T. This Court lacks the jurisdiction to do so. Cantor 442 F.3d at 202. As the Court understands the procedural posture of this case, prior to commencement of this case in this court, Mr. Wagner filed a domestic violence petition in the District Court of Maryland for St. Mary's County after Mrs. Wagner fled the marital home with her children. That emergency action was dismissed, but an agreement between the parties was placed on the record, but never embodied in a Court order, granting joint custody of T to the plaintiff and defendant, but allowing plaintiff primary physical custody of the child, with daily visitation rights for the defendant. See Defendant's "Verified Response With Incorporated Memorandum of Law," Exhibit 6 at 3.[8]

Mr. Wagner then filed a custody action in the Circuit Court for St. Mary's County, which is still pending. The Circuit Court is perfectly competent to hear this case, and should be permitted to resolve the issues before it.[9] Further, Mrs. Wagner is free to raise any argument under ICARA before

---

[8] The agreement provided specific visitation rights for the defendant, including one hour each day and three hours every third day, as well as every other weekend, and eight hours of visitation on Saturdays and Sundays. See Defendant's "Verified Response With Incorporated Memorandum of Law," Exhibit 6 at 3-4. In addition, that agreement required the Defendant to locate and pay for an apartment for the plaintiff. Id. at 5. Defendant also agreed to pay $500 per month for child support and to provide the plaintiff with a driver. Id. It was also agreed that neither party would leave the state with the child, T. Id. at 5-6.

[9] Accordingly, the Court will not address Plaintiff's allegations about her current living conditions. These are best left to the Circuit Court for St. Mary's County to evaluate in the custody action. The Court notes the existence of evidence that refutes Plaintiff's allegations, see Defendant's Exhibits 1A - 1G, however, the Court need not reach a determination of this issue and chooses not to do so.

that tribunal, as state and federal courts share concurrent jurisdiction over Hague Convention matters. 42 U.S.C. § 11603(a). Thus, the decision of this Court does not leave Mrs. Wagner without a remedy for the determination of custody rights, even to the extent that the custody rights are tied to claims under ICARA. Cantor, 442 F.3d at 206.

On a final note, the Court finds it disingenuous that Mrs. Wagner seeks to use ICARA to essentially obtain permission to abduct her son, T, in July when she must return to Poland. Her complaint flies in the face of the Convention's purpose and would be particularly inappropriate in this case in which Mrs. Wagner has been ordered to return to Poland because of her initial violation of ICARA in removing her daughter, A, to the United States without the consent of A's father or approval of the Polish Courts.

For these reasons, and for the reasons stated on the record at a hearing before the undersigned on June 21, 2007, it is this 21st day of June, 2007, by the United States District Court for the District of Maryland,

**ORDERED**, that Plaintiff's Petition to Establish Poland as Country of Habitual Residence [Paper No. 1] is hereby **DISMISSED** for lack of jurisdiction; and it is further

**ORDERED**, that judgment and costs be entered in favor of the defendant; and it is further

**ORDERED**, that the Clerk of the Court is directed to close the case.

ROGER W. TITUS
UNITED STATES DISTRICT JUDGE